UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LISA JOHNSON, individually and
as next friend of L.R.,

                    Plaintiff,

          -against-                                    1:16-CV-1331 (LEK/DEP)

NEW YORK STATE OFFICE OF CHILD
AND FAMILY SERVICES, *et al.*,

                    Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On November 7, 2016, plaintiff Lisa Johnson commenced this action individually and as next friend of her minor grandson, L.R. Dkt. No. 1 ("Complaint"). Plaintiff's amended complaint, Dkt. No. 36 ("Amended Complaint"), names as defendants the New York State Office of Children and Family Services ("OCFS"), the Albany County Department for Children, Youth, and Families ("DCYF"), Cheryl Cullen, Acting Commissioner of OCFS Sheila Poole, and several DCYF officials and employees: Gail Geohagen-Pratt, Ashanta Harris, Catherine Warren, and Marian Logan. Plaintiff alleges that Defendants terminated Plaintiff's foster care benefits and revoked her foster care certification in violation of the United States Constitution, the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670 *et seq.* ("AACWA"), and New York law. Am. Compl. Defendants OCFS, Poole, and Cullen (together, the "Moving Defendants"), moved to dismiss all claims asserted against them in the Amended Complaint. Dkt. Nos. 49 ("Motion"), 49-7 ("Memorandum"). For the reasons that follow, the Motion is granted.

II.   **BACKGROUND**

**A. Factual History**

When L.R. was born, both he and his birth mother, Plaintiff's daughter, lived in Plaintiff's home. Am. Compl. ¶ 74. In March 2013, L.R.'s mother "was asked to leave" the home. Id. ¶ 75. Plaintiff then sought to become certified as L.R.'s foster parent. Id. ¶¶ 80–82. At that time, DCYF contracted with Berkshire Farm Center and Services for Youth "to approve and certify foster homes." Id. ¶ 83. After an inspection in September 2013, "Berkshire Farm made an emergency certification of [Plaintiff's] home." Id. ¶ 87. At the end of September 2013, Plaintiff began receiving foster care maintenance payments on behalf of L.R. Id. ¶ 89. "On March 4, 2014, Berkshire Farm approved . . . [Plaintiff's] home as a suitable foster home for L.R." Id. ¶ 92. Plaintiff maintains that this was when "the home had been fully certified" as a foster care home. Id. ¶ 109.

In April 2014, DCYF sent a notice to Plaintiff, informing her of the agency's intent to remove L.R. from her home on April 24. Id. ¶ 100. Soon after receiving the notice, Plaintiff spoke to Ashanta Harris, a DCYF case worker, who told her that "if she wanted L.R. to stay in her home, she would have to file a petition for custody under Article 6 of the Family Court Act," and that "it would be 'safest'" if Plaintiff filed a petition for custody.[1] Id. ¶ 102. On April 18, Plaintiff filed a custody petition in the Albany County Family Court. Id. ¶ 104.

On April 25, 2014, the Albany County Family Court issued an order vacating DCYF's custody of L.R. and granting Plaintiff custody of her grandson through direct placement "until

---

[1] The Family Court placed L.R. in DCYF's custody on September 18, 2013. Am. Compl. ¶ 79.

further order of the Court."[2] Id. ¶¶ 111–12. Some time between April and June 2014, DCYF

terminated Plaintiff's foster care benefits. Id. ¶ 116. After the termination of her foster care

benefits, Plaintiff successfully applied for "a 'child only' cash grant for the support of L.R.,"

which provided her with less money than the foster care benefits had. Id. ¶ 117. On

September 3, 2014, the Family Court granted Plaintiff "legal and physical custody of L.R. under

Article 6 of the Family Court Act." Id. ¶ 122.

     Plaintiff also states that her foster care certification was revoked, id. ¶ 124, but does not

state when it was revoked or who revoked it. She alleges that, "[o]n or about July 10, 2014," after

she "requested a conference" with Marian Logan, DCYF's Director of Children Services, Logan

sent Plaintiff a letter explaining that her foster care certification "was not valid" because Plaintiff

did not complete various "required certification activities" in a timely manner. Id. ¶¶ 118–19.

     In December 2014, Plaintiff, through counsel, requested that OCFS and DCYF provide a

hearing regarding the termination of her foster care benefits and revocation of her foster care

certification. Id. ¶¶ 123–24. OCFS held a hearing on March 10, 2015, and the presiding

administrative law judge concluded that the agency did not have jurisdiction to hear Plaintiff's

grievances. Id. ¶¶ 125, 127.

     Plaintiff alleges that, without foster care benefits, she and L.R. suffer "financial hardship"

and "are regularly hungry due to lack of income to buy food." Id. ¶ 131. Plaintiff further alleges

that, because Defendants never provided the basis for terminating her foster care maintenance

---

    [2] A later paragraph in the Amended Complaint states that this order was issued on
June 4, 2015. Am. Compl. ¶ 115. However, because numerous allegations suggest that Johnson
had custody of L.R. well before June 2015, e.g., id. ¶¶ 112, 122, 126, 128, the Court assumes that
the later date is a typographical error.

payments or revocation of her foster care certification "through a written notice," she and L.R. suffer from "emotional distress, mental anguish, and anxiety." Id.

### B. Procedural History

Plaintiff filed her original complaint on November 7, 2016. Compl. Plaintiff's Amended Complaint, filed on May 15, 2017, names OCFS, DCYF, Poole, Cullen, Pratt, Logan, Harris, and Warren as defendants. Am. Compl. Plaintiff brings claims under 42 U.S.C. § 1983, alleging that Defendants violated AACWA and the Due Process Clause of the Fourteenth Amendment when they failed to provide notice and an opportunity for a hearing regarding the termination of Plaintiff's foster care maintenance payments and the revocation of her foster care certification. Id. ¶¶ 33–34, 132–33. Plaintiff also alleges violations of New York State law. Id. ¶ 132.

Plaintiff seeks (1) a declaration that Defendants "violated and continue to violate plaintiffs [sic] federal and state rights"; (2) an injunction requiring that Defendants provide Plaintiff and L.R. with notice and an opportunity for a hearing; (3) "damages for lost foster care benefits"; and (4) "damages for . . . pain and suffering." Id. at 27–28. The Moving Defendants moved to dismiss all claims asserted against them in the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Mot.; Mem. Plaintiff opposed the Motion, Dkt. No. 54 ("Response"), and the Moving Defendants filed a reply, Dkt. No. 55 ("Reply"). For the reasons that follow, the Motion is granted.

### III.    LEGAL STANDARD

**A.  Rule (12)(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." New York by Schneiderman v. Utica City Sch. Dist., 177 F. Supp. 3d 739, 745 (N.D.N.Y. 2016) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." Id. at 746 (quoting Makarova, 201 F.3d at 113).

**B.  Rule 12(b)(6)**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the nonmoving party. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct

based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV.    DISCUSSION

### A.  12(b)(1) Motion

#### 1. *Rooker-Feldman*

The Moving Defendants argue that the Rooker-Feldman doctrine deprives the Court of subject matter jurisdiction because Plaintiff effectively asks the Court to reexamine the Albany County Family Court's 2014 orders that granted her custody of L.R. Mem. at 11–12. "Rooker-Feldman bars the federal courts from exercising jurisdiction over claims 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Sykes v. Mel S. Harris & Assocs., LLC, 780 F.3d 70, 94 (2d Cir. 2015) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

The Supreme Court has emphasized that "Rooker-Feldman . . . is a narrow doctrine," and does not create "a wide-reaching bar on the jurisdiction of lower federal courts." Lance v. Dennis, 546 U.S. 459, 464 (2006). Rooker-Feldman applies if four requirements are satisfied: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted).

Rooker-Feldman does not deprive the Court of jurisdiction over Plaintiff's action because

the doctrine's second and third requirements are not satisfied. Regarding the second requirement, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Hoblock, 422 F.3d at 88. A state-court judgment "produces" a third party's actions when the third parties "act[] under compulsion of a state-court order." Id.

Here, Plaintiff does not challenge any state court judgment and Defendants did not act under the compulsion of a state court judgment. The April 25, 2014 Family Court order vacated DCYF's custody of L.R. and, through direct placement, granted Plaintiff custody of L.R. Am. Compl. ¶¶ 111–12. The September 23, 2014 Family Court order awarded her permanent "legal and physical custody of L.R." Id. ¶ 122. Plaintiff does not challenge either order. Rather, she argues that, despite the orders, Defendants unlawfully terminated her foster care benefits and revoked her foster certification without notice and an opportunity for hearing. E.g., Resp. at 23–24.

Moreover, the Moving Defendants do not claim that either of the Family Court orders instructed DCYF to terminate Plaintiff's foster care benefits. It appears that DCYF employees terminated the benefits on April 25, 2014, after they determined that the Family Court order rendered Plaintiff ineligible for future foster care benefits. Id. ¶ 112 (quoting DCYF caseworker who stated, "As a result of the direct . . . placement [of L.R.] with [Plaintiff], [DCYF] will no longer be paying . . . for any foster care services to the family"). Even if canceling Plaintiff's benefits *in light of* the Family Court order was appropriate, DCYF was not acting under *compulsion* of the order. Plaintiff and L.R.'s alleged injuries relating to the termination of

Plaintiff's foster care benefits, therefore, were not caused by the Family Court orders. See

Morrison v. City of New York, 591 F.3d 109, 110, 112 (2d Cir. 2010) (holding that Rooker-

Feldman did not bar plaintiff's request for "relief based on discretionary decisions of the hospital

that were not mandated by the Family Court order," even though defendants claimed that the

hospital acted in response to the order).

Plaintiff's alleged injuries stemming from the revocation of her foster care certification

were, similarly, not caused by a state court judgment. Plaintiff does not explain who revoked her

certification. She does, however, allege that DCYF cited her failure to complete "certification

activities" in a timely manner as the reason her certification was revoked. Am. Compl. ¶ 119.

Regardless of the vagueness of this allegation, it appears to stem from an administrative decision

that was unrelated to a state court judgment.

Rooker-Feldman's third requirement is also inapplicable. This requirement applies only

when granting "relief necessarily would require the district court to 'determine that a state-court

judgment was erroneously entered or was void.'" Ward v. Bankers Trust. Co. of California, N.A.,

No. 09-CV-1943, 2011 WL 1322205, at *7 (E.D.N.Y. Mar. 29, 2011) (quoting Kropelnicki v.

Siegel, 290 F.3d 118, 129 (2d Cir. 2002)). Plaintiff's action requires no examination of the

Family Court orders. Whether Defendants violated AACWA or denied Plaintiff and L.R. due

process requires an analysis of AACWA and whether Plaintiff and L.R. "have a legitimate claim

of entitlement" to allegedly deprived property interests, Bd. of Regents of State Colls. v. Roth,

408 U.S. 564, 577 (1972), not the merits of the Family Court orders. Plaintiff's request for

"damages for lost foster care benefits," Am. Compl. at 28, is no exception. She does not allege

that she and L.R. deserve compensation because of any error in the Family Court orders. Instead,

she asks for such damages "pending receipt of adequate notice and a meaningful opportunity to be heard." Id. ¶ 10. Even though this is an inappropriate remedy for a denial of procedural due process, e.g., Miner v. City of Glens Falls, No. 89-CV-918, 1992 WL 349668, at *1 (N.D.N.Y. Nov. 12, 1992) (noting that a plaintiff alleging a procedural due process violation must show "that the damages stemmed from the procedural violation rather than from the underlying deprivation"), it does not require the Court to scrutinize a state court judgment. For these reasons, Rooker-Feldman does not deprive the Court of subject matter jurisdiction over Plaintiff's case.

### 2. The Domestic Relations Exception

The Moving Defendants also argue that the domestic relations exception to federal subject matter jurisdiction prohibits the Court from considering Plaintiff's action because Plaintiff attempts to "rewrit[e] a child custody dispute as a federal civil rights claim." Mem. at 10. The domestic relations exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992). Notwithstanding this limitation, courts in this circuit have applied the exception to "claims [that] begin and end in a domestic dispute." McKnight v. Middleton, 699 F. Supp. 2d 507, 517 (E.D.N.Y. 2010) (internal quotation marks omitted); see also Joseph v. Stewart, No. 13-CV-1678, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) ("Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters.").

The domestic relations exception is inapplicable to this action. Plaintiff's request for notice and an opportunity for a hearing does not concern "issuance of a divorce, alimony, or child

custody decree." <u>Ankenbrandt</u>, 504 U.S. at 704. In fact, resolving her claims requires no analysis

of the Family Court orders or substantive state domestic relations law, which further indicates

that Plaintiff's claims do not begin and end in a domestic dispute. <u>See</u> <u>Renaud v. Mattingly</u>,

No. 09-CV-9303, 2010 WL 3291576, at *4 n.7 (S.D.N.Y. Aug. 10, 2010) (holding the domestic

relations exception inapplicable where "[t]he issue before [the] court [was] whether [p]laintiff

was afforded sufficient due process protection . . . and does not involve the issuance of a custody

decree"); <u>McKnight</u>, 699 F. Supp. 2d at 518–19 (recognizing that raising a procedural due

process challenge against "the state's procedure used to separate a parent from a child" does not

implicate the domestic relations exception because adjudicating the challenge "does not entail

any investigation by the federal court into" domestic relations issues (quoting <u>Thomas v. New</u>

<u>York City</u>, 814 F. Supp. 1139, 1146–47 (E.D.N.Y. 1993))).

### 3. Mootness

The Moving Defendants argue that Plaintiff's claims are moot because she "does not have

a legally cognizable interest that can be redressed in this case" by awarding relief against them.

Mem. at 7–8. A claim is moot if the party does not have, "at all stages of the litigation, . . . an

actual injury which is likely to be redressed by a favorable judicial decision." <u>United States v.</u>

<u>Williams</u>, 475 F.3d 468, 478–79 (2d Cir. 2007) (internal quotation marks omitted), <u>cert. denied</u>,

552 U.S. 1105 (2008). "If a controversy is moot, then the Court lacks subject matter jurisdiction

over the action." <u>Ward v. Bank of New York</u>, 455 F. Supp. 2d 262, 266 (S.D.N.Y. 2006) (citing

<u>Church of Scientology v. United States</u>, 506 U.S. 9, 12 (1992).

The Moving Defendants argue that Plaintiff and L.R. do not have redressable injuries

because Plaintiff "seeks reinstatement of her foster parent status," and because "OCFS does not

have the power to nullify the Family Court's orders concerning custody of L.R., nor to award

foster care benefits for a non-foster child . . . ." Mem. at 7–8. This, however, misstates Plaintiff's

requests for relief. She complains only of injuries related to the deprivation of her foster care

benefits and certification without procedural protections. These injuries are plainly redressable,

and the Court rejects the Moving Defendants' mootness argument.

For the foregoing reasons, the Court will not dismiss Plaintiff's claims for lack of subject

matter jurisdiction.

### B.  12(b)(6) Motion

The Moving Defendants argue that the Amended Complaint fails to state a claim against

them because the Eleventh Amendment immunizes them from Plaintiff's claims and because

Plaintiff fails to allege a § 1983 violation. Mem. at 13–24. The Court addresses these arguments

below.

### 1.  Eleventh Amendment

Under the Eleventh Amendment, "neither a State nor agencies acting under its control

may be subject to suit in federal court." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf &

Eddy, Inc., 506 U.S. 139, 144 (1993) (internal quotation marks omitted). "This jurisdictional bar

applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp. v. Halderman,

465 U.S. 89, 100 (1984). The Eleventh Amendment also bars suits for monetary damages

brought by citizens against a state official in her official capacity. Kentucky v. Graham, 473 U.S.

159, 169 (1985).

The Eleventh Amendment is inapplicable if the state waives its immunity to suit, or if

Congress enacts a statute that "abrogate[s] a state's sovereign immunity." CSX Transp., Inc. v.

New York State Office of Real Prop. Servs., 306 F.3d 87, 95 (2d Cir. 2002). Furthermore, the Amendment does not apply to claims brought against a state official in their individual capacity, Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993), or to claims against state officials seeking prospective injunctive relief, Edelman v. Jordan, 415 U.S. 651, 677 (1974).

Plaintiff's Amended Complaint seeks monetary damages and injunctive and declaratory relief from each of the Moving Defendants. Am. Compl. at 27–28. Plaintiff specifies that she is suing Poole in her individual and official capacities. Id. at 1. The Eleventh Amendment does not bar Plaintiff's request for damages from Poole in her individual capacity. It also does not bar Plaintiff's request for an injunction demanding notice and an opportunity for a hearing, id. at 27–28, because this is a request for prospective relief. Also, because neither the Amended Complaint nor Defendants' briefing explains who Cullen is or whether this person is a state official, the Court will not dismiss the claims against Cullen on Eleventh Amendment grounds.[3]

The Eleventh Amendment bars the remainder of the claims asserted against the Moving Defendants. Plaintiff's suit against OCFS, a New York State agency, is plainly barred, as is her suit against Poole to the extent that Plaintiff seeks damages from Poole in her official capacity. Moreover, Plaintiff's request for a declaration that Poole "violated" her and L.R.'s rights in the

---

[3] Plaintiff's Response does not clarify whether Cullen is a state official, but, in a footnote, calls Cullen a "supervisor" and attaches a hyperlink to a LinkedIn profile. Resp. at 14 n.2. When the response to a 12(b)(6) motion includes allegations not included in the pleadings, a "district court[]. . . may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment." Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988). "Factual allegations contained in legal briefs . . . are . . . matters outside the pleading[s] for purposes of Rule 12(b)." Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 285 (S.D.N.Y. 2015). The Court will not accept a link to a social media profile as a substitute for identifying Cullen in the Amended Complaint, and excludes this footnote from its consideration of the Motion.

past, Am. Compl. at 27, is a request for retrospective declaratory relief, which is barred by the

Eleventh Amendment, Puerto Rico Aqueduct & Sewer Auth., 506 U.S. at 146. The Court

dismisses each of these claims.

### 2. Section 1983

"In order to state a claim pursuant to . . . § 1983, a plaintiff must allege that (1) 'some

person has deprived him of a federal right,' and (2) 'the person who has deprived him of that

right acted under color of state . . . law.'" Riviere v. Collins, No. 10-CV-548, 2010 WL 3323801,

at *1 (N.D.N.Y. May 28, 2010) (second alteration in original) (quoting Velez v. Levy, 401 F.3d

75, 84 (2d Cir. 2005)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff

must plead that each Government-official defendant, through the official's own individual

actions, has violated" a federal right. Iqbal, 556 U.S. at 676. Plaintiff alleges, pursuant to § 1983,

violations of AACWA and of the Due Process Clause of the Fourteenth Amendment. Am.

Compl. ¶¶ 11, 33–34, 132. The Court reviews these claims below.

### a. Claims against Cullen

Plaintiff seeks relief from Cullen under § 1983, id. ¶¶ 1, 132–33. The Amended

Complaint does not state whether Cullen is a government official, and Plaintiff therefore fails to

allege that Cullen acted under color of state law. Consequently, the § 1983 claims against Cullen

are dismissed.

### b. Due Process Claims

Plaintiff argues that Defendants terminated her foster care benefits and revoked her foster

care certification without due process. Am. Compl. ¶ 1. The Due Process Clause of the

Fourteenth Amendment prohibits the states from "depriv[ing] any person of life, liberty, or

property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]o establish a procedural

due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected

property or liberty interest and was deprived of it without due process." Palacio v. Pagan, 345 F.

App'x 668, 669 (2d Cir. 2009). As discussed below, the Court finds that Plaintiff fails to allege a

due Process violation.

### i. Property Interest

First, Plaintiff fails to allege that the termination of her foster care benefits constituted a

due process violation because she and L.R. had no constitutionally protected property interest in

foster care benefits. "To have a property interest in a benefit, a person clearly must have more

than an abstract need or desire and more than a unilateral expectation of it. He must, instead,

have a legitimate claim of entitlement to it." Harrington v. Cty. of Suffolk, 607 F.3d 31, 34 (2d

Cir. 2010) (quoting Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)). "Such

entitlements are . . . 'created and their dimensions are defined by existing rules or understandings

that stem from an independent source such as state law.'" Id. (quoting Castle Rock, 548 U.S.

at 756). See also Murphy v. Bd. of Educ. of Oceanside Union Free Sch. Dist., No. 03-CV-4113,

2005 WL 2305009, at *3 (E.D.N.Y. Sept. 20, 2005) ("A person's interest or benefit constitutes a

legitimate claim of entitlement if it is supported by contractual or statutory language that might

be invoked at a hearing." (internal quotation marks omitted)).

Plaintiff cites provisions of AACWA, and New York regulations implementing

AACWA's requirements, without explaining their relevance. Am. Compl. ¶¶ 34–41. Even

assuming that these citations are meant to demonstrate Plaintiff and L.R.'s entitlement to foster

care maintenance payments, the laws cited only require that payments be made on behalf of

14

children who are in the custody of a state or local agency. Under AACWA, states receive federal

funding if they create plans for foster care and adoption assistance that comply with numerous

federal requirements. New York State Citizens' Coal. for Children v. Carrion, 31 F. Supp. 3d

512, 514–15 (E.D.N.Y. 2014). AACWA only requires states to "make foster care maintenance

payments on behalf of [a] child . . . if . . . [t]he child's placement and care are the responsibility

of—(i) the State agency administering the State plan . . . [or] (ii) any other public agency with

which the State agency administering or supervising the administration of the State plan has

made an agreement which is in effect." § 672(a)(1), (2)(B). New York's state plan does not

broaden this eligibility criteria. New York Social Services Law directs OCFS to "establish[]

standards of payment for care provided foster children." N.Y. Soc. Serv. Law § 398-a. OCFS'

implementing regulations limit the definition of "foster child" to a child whose "care and

custody . . . have been transferred to an authorized agency." 18 N.Y.C.R.R. § 427.2.

It is undisputed that DCYF is an "authorized agency" under OCFS regulations. Mem.

at 17; e.g., Am. Compl. ¶ 44. The Family Court vacated DCYF's custody of L.R. on

April 25, 2014. Id. ¶ 111. The Court emphasizes that it was *Plaintiff* who sought custody of L.R.

after DCYF sent her a removal notice. Id. ¶ 104. While Plaintiff alleges, in conclusory fashion,

that DCYF "routinely encourages relatives to file for custody of their minor kin," id. ¶ 71, she

does not allege any facts suggesting, for instance, that DCYF sent an erroneous removal notice to

goad her into petitioning for custody, that they misrepresented any facts to her, or that they

otherwise coerced her into petitioning for custody. More importantly, she does not allege that the

Moving Defendants had anything to do with her decision to seek custody of L.R.

In any event, when the Family Court granted Plaintiff custody of L.R. on April 25, L.R. was no longer in the "care and custody" of an "authorized agency." Consequently, he lost his status as a foster child before DCYF terminated Plaintiff's benefits. L.R.'s status change rendered Plaintiff ineligible, under AACWA and New York law, to receive maintenance payments on his behalf. See Meyers v. Kishimoto, 217 F. Supp. 3d 563, 578 (D. Conn. 2016) (finding no due process violation for terminating a teacher with expired teaching certificate because she was no longer a "teacher" within meaning of statute and "no longer ha[d] a reasonable expectation of continued employment" provided to "teachers" by that statute); Coreia v. Schuylkill Cty. Area Vocational-Technical Sch. Auth., 241 F. App'x 47, 50 (3d Cir. 2007) (holding that teacher with expired teaching certificate lost "professional employee" status and no longer had a legitimate claim of entitlement to continued employment as provided to "professional employees" by statute). Therefore, Plaintiff and L.R. have no legitimate claim of entitlement to, and no constitutionally protected interest in, foster care benefits.

Plaintiff's Response does not challenge this analysis, but instead broadly asserts that foster parents and children have a property interest in foster care maintenance payments. Resp. at 12–13. This is legally irrelevant; as outlined above, L.R. was not a foster child when Plaintiff's benefits were terminated, and Plaintiff was not a foster parent. See N.Y. Soc. Serv. Law § 371(19) ("'Foster parent' shall mean any person with whom a child, in the care, custody or guardianship of an authorized agency, is placed for temporary or long-term care."). Plaintiff also argues in her Response that her due process claim should survive dismissal so that she may engage in discovery to find "statutes, regulations, agency handbooks and memoranda, and other official pronouncements" that support her claim. Resp. at 12. However, this argument is

meritless. "[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether [s]he has such a claim." Podany v. Robertson Stephens, Inc., 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004). Plaintiff has not alleged that she or L.R. have a property interest in foster care maintenance payments and has, therefore, failed to allege that the termination of these payments violated due process.

Second, Plaintiff fails to allege the personal involvement of any Moving Defendant in the revocation of her foster care certification. In fact, she does not allege who revoked her certification, but hints that the revocation was an administrative decision by DCYF. See Am. Compl. ¶¶ 112 (quoting email sent by DCYF caseworker to other DCYF employees "regarding the Lisa Johnson denial of kinship certification issue"), 119 (quoting letter sent to Plaintiff by DCYF official explaining why Plaintiff's foster care certification was revoked). As explained above, a § 1983 claim requires a plaintiff to allege facts detailing the defendant's personal involvement in a violation of a federal right. Because Plaintiff does not allege the personal involvement of any Moving Defendant in the revocation of her foster care certification, this claim must be dismissed.

### ii. Liberty Interest

Plaintiff, in a brief paragraph in her Response, asserts that the termination of her foster care benefits violated her liberty interest in "rais[ing] children without undue government interference" because, without these benefits, "the stability and wellbeing [sic] of [her] family" is jeopardized. Resp. at 13. The right to raise one's children without undue government interference is a protected liberty interest, Stanley v. Illinois, 405 U.S. 645, 651 (1972), and this interest "has

17

many avatars," Franz v. United States, 707 F.2d 582, 595 (D.C. Cir. 1983). However, Plaintiff provides no authority to suggest that the government must provide monetary assistance to a family who is otherwise ineligible for such assistance to enable them to optimally enjoy this liberty interest. Moreover, "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Rust v. Sullivan, 500 U.S. 173, 201 (1991) (quoting Webster v. Reproductive Health Servs., 492 U.S. 490, 507 (1989)). Therefore, Plaintiff fails to establish that she and L.R. were deprived of a liberty interest, and her due process claims must be dismissed.

### c.  AACWA claim

Plaintiff asserts that the termination of her foster care benefits without a hearing violated "federal statutes and regulations," Am. Compl. ¶ 132, without specifying what federal laws were allegedly violated. However, Plaintiff lists § 671(a)(12), a provision of AACWA, in the "Statutory and Regulatory Scheme" portion of the Amended Complaint, Am. Compl. ¶ 34, and both parties' memoranda suggest that this is the statutory provision the Moving Defendants allegedly violated. Mem. at 21; Resp. at 17. Therefore, the Court assumes that this is the case.

Section 671(a)(12) requires state plans to "provide[] for granting an opportunity for a fair hearing before the State agency to any individual whose claim for benefits available pursuant to [AACWA] is denied or is not acted upon with reasonable promptness." Defendants argue that AACWA does not create a private right of action and that Plaintiff fails to allege that Defendants violated the Act. Mem. at 21–23. The Court finds that, even if AACWA does create a private right of action, Plaintiff's claim fails because § 671(a)(12) does not apply to her and L.R.

Plaintiff has custody of L.R. He was not a foster child, and Plaintiff was not a foster

parent, at the time her benefits were terminated. AACWA's benefits "are only available to

maintain the child while in foster care." Maher v. White, 90-CV-4674, 1992 WL 122912, at *3

(E.D. Pa. June 2, 1992). Plaintiff, therefore, is not "any individual" with a "claim for benefits"

within the meaning of § 671(a)(12). See id. (holding that AACWA does not provide benefits for

"natural parents," and concluding that, under § 671(a)(12), "natural parents, who have no claim

to the benefits, have no right to notice when they are denied"). Cf. Timmy S. v. Stumbo, 916

F.2d 312, 315 (6th Cir. 1990) (holding that foster parents were entitled to fair hearing under

§ 671(a)(12) because AACWA's legislative history clearly indicated Congress's intent to provide

fair hearing rights for foster parents); Claudio v. Dowling, 89 N.Y.S.2d 567, 574–75 (1997)

("*Because foster parents are beneficiaries of case plans*, [foster parent] appellants fall within the

category of 'any individual.'" (emphasis added)). Because Plaintiff and L.R. had no claim for

benefits under AACWA when Plaintiff's benefits were terminated, they are not entitled to a fair

hearing. Therefore, Plaintiff fails to allege a violation of AACWA, and this claim must be

dismissed.

### C.  State Law Claims

Plaintiff "seeks to enforce pendent state procedural and substantive rights," and asserts

that Defendants violated "New York State regulations." Am. Compl. ¶¶ 11, 132. When a federal

court has original jurisdiction over claims in an action, it may exercise supplemental jurisdiction

over "all other claims that are so related to claims in the action within such original jurisdiction

that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Court declines to

exercise supplemental jurisdiction over Plaintiff's state law claims because it has already

dismissed every claim over which it has original jurisdiction. See § 1367(c) (providing that a "district court[] may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"). The Court, therefore, dismisses the state law claims.

### D.  Leave to Replead

Plaintiff did not ask the Court for leave to amend any claims dismissed in this Memorandum-Decision and Order. The Moving Defendants, though, ask the Court to dismiss each claim asserted against them in the Amended Complaint without leave to amend, arguing that allowing Plaintiff to further amend her pleading would be futile. Mem. at 1, 25. Rule 15 of the Federal Rules of Civil Procedure provides that, after a party has "amend[ed] its pleading once as a matter of course," it may do so again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The Court should allow leave to amend "[i]n the absence of . . . undue delay . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment...." Rusyniak v. Gensini, 629 F. Supp. 2d 203, 212 (N.D.N.Y. 2009) (alterations in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Allowing amendment of a pleading is "futile" if the pleading as amended could not survive a motion to dismiss. Id. "Furthermore, if amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied." Jones v. Cty. of Suffolk, 236 F. Supp. 3d 688, 702 (E.D.N.Y. 2017).

The Court agrees with the Moving Defendants that granting Plaintiff leave to amend would be futile. The Amended Complaint is replete with substantive defects. For instance, many

of the claims asserted against the Moving Defendants are irreparable because they are barred by

the Eleventh Amendment. Similarly, Plaintiff's AACWA and due process claims related to the

termination of her foster care benefits are insufficient as a matter of law. Also, as explained

above, the factual allegations surrounding the revocation of Plaintiff's foster care certification are

sparse and contain no hint that any of the Moving Defendants were involved in this decision.

Therefore, leave to amend this claim would be futile because "it is hardly self-evident that

[Plaintiff] could transform the facts pleaded into a sufficient allegation" of a § 1983 claim.

Chandradat v. Navillut Tile, No. 03-CV-10093, 2004 WL 2186562, at *7 (S.D.N.Y. Sept. 28,

2004) (quoting In re Am. Express Co. Shareholder Litig., 39 F.3d 395, 402 (2d Cir. 1994)). For

these reasons, the claims asserted in Plaintiff's Amended Complaint against the Moving

Defendants are dismissed without leave to amend.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Moving Defendants' motion to dismiss (Dkt. No. 49) is

**GRANTED** for failure to state a claim; and it is further

**ORDERED**, that the claims asserted in the Amended Complaint (Dkt. No. 36) against

OCFS, Cullen, and Poole are **DISMISSED without leave to amend**; and it is further

**ORDERED**, that OCFS, Cullen, and Poole are **DISMISSED** as defendants in this action;

and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on

Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      December 18, 2017
                Albany, New York

Lawrence E. Kahn
U.S. District Judge